St. Louis Southwestern Railway Company *v.* Tucker.

Opinion delivered November 19, 1923.

1.   Pleading—defective statement.—Where plaintiff's testimony made out a case for damages, a judgment in his favor will not be set aside because his cause of action and the measure of his damages were defectively stated, in the absence of a demurrer or motion to make his complaint more specific.

2.   Carriers—duty of owner to receive damaged shipment.—It is the duty of the owner to receive freight from a carrier, though damaged in transit, and to minimize the damages, if it can be done at a reasonable cost.

3.   Carriers—damaged freight—repairs.—Where the sum expended for repairs to an article damaged in transit was less than the

difference between the market value of the article in its damaged and its restored condition, the sum thus expended is reasonable.

4. DAMAGES—COST OF RESTORATION.—Where an article damaged by a carrier has actual value, but no market value, the cost of restoration is the proper measure of damages.

5. CARRIERS—REPAIRS TO DAMAGED FREIGHT—ACQUIESCENCE.—Where plaintiff made no objection to the court fixing the cost of repairs as the measure of damages to an article injured in transit, he will be deemed to have acquiesced in the assumption that repairs restored the article to its former value.

Appeal from Clay Circuit Court, Eastern District; *W. W. Bandy,* Judge; affirmed.

*Lamb & Frierson,* for appellant.

The court erred in directing a verdict for the plaintiff. There was no legal measure of damages pleaded, and the court erred in allowing plaintiff to prove the amount required to repair the show-cases. 88 Ark. 594; 76 Ark. 542; 89 Ark. 518; 110 Ark. 49; 111 Ark. 521; 101 Ark. 172.

*Hunter & Hunter,* for appellee.

The measure of damages was correct. 120 Ark. 264; 134 Ark. 430; 120 Ark. 119. Objections not raised in the lower court cannot be considered here for the first time. 130 Ark. 291; 133 Ark. 196; 154 Ark. 440.

SMITH, J. The plaintiff in this case alleged that he shipped eight show-cases over the defendant railroad, and that "said show-cases were so badly damaged and broken when delivered that it cost plaintiff, on account of such damage and breaking, to repair the same, in actual cash the sum of $273.35, to his damage in that amount," wherefore he prayed judgment in that amount.

The show-cases were second-hand, and plaintiff testified that he bought them at a bargain, and that he paid $442 for them and $100 freight, and that he "figured their value at $750," and in answer to a question from his attorney he stated the market value of the cases to be $750.

After describing the manner in which the cases were broken, the witness proceeded to relate how he had

repaired them, and that the cost thereof had been $273.35, whereupon counsel for the railroad objected to this answer, because "(1), there was no legal damage alleged in the complaint, and (2), because that would not be the measure of damage under the law, the true damage being the difference between the market value of the property at Center, Missouri (the point of shipment), and its value when tendered him."

The witness was then asked the market value of the show-cases in the condition in which they were received. He answered that the cases, in their crates, looked like a car of junk, and looked so bad he didn't want to receive the shipment at all, but he did receive it because he realized he could get more out of it than any one else. He then answered that the value was $200.

Under the direction of the court the jury returned a verdict for the plaintiff for $273.35, and the railroad company has appealed.

It is obvious that the plaintiff stated his cause of action and the measure of his damages defectively; but there was neither demurrer to the complaint nor motion to make it more definite, and his testimony made a case which entitled him to recover damages.

The plaintiff was right in assuming that it was his duty to receive the cases, notwithstanding their injured condition, and it was his duty to minimize the damage, if this could be done at a reasonable cost, and the sum expended for that purpose does not appear to have been unreasonable, in comparison with the value of the property in the restored condition.

In the case of *St. L. I. M. & S. Ry. Co.* v. *Laser Grain Co.,* 120 Ark. 119, we said: "The rule for computation of damages for delay and injury in transportation of goods is the difference between the market price of the goods at the time and place when and where they should have been delivered and their value when and in the condition in which they were delivered. *St. L. I. M. & So. Ry. Co.* v. *Tilby,* 117 Ark. 163, 174 S. W. 1167."

The undisputed testimony in this case is to the effect that the plaintiff had paid $542 for the cases, including the freight, and he stated the market value, at the time and place of delivery, to be $200, the difference of $342 being greater than the cost of restoration, for which amount the jury's verdict was returned.

In some cases the cost of restoration is itself the proper measure of damages. This would be true in a case where the article damaged had actual value but no market value. In the case of *St. L. I. M. & So. Ry. Co. v. Dague,* 118 Ark. 277, the carrier lost a machine valuable to the owner, but without market value. We there quoted with approval from the case of *Southern Express Co. v. Owens,* 146 Ala. 412, 9 Am. & Eng. Ann. Cas. 1143, the following statement of the law: "In an action to recover for the loss of an article which had no market value, the measure of damages should be the value of the article to the plaintiff, and, in ascertaining this value, inquiry may be made into the constituent elements and the cost to the plaintiff of producing the article." We further quoted from that opinion as follows: "Ordinarily, where property has a market value that can be shown, such value is the criterion by which actual damages for its destruction or loss may be fixed. But it may be that property destroyed or lost has no market value. In such state of the case, while it may be true that no rule which will be absolutely certain to do justice between the parties can be laid down, it does not follow from this, nor is it the law, that the plaintiff must be turned out of court with nominal damages merely. Where the article or thing is so unusual in its character that market value cannot be predicated of it, its value, or plaintiff's damages, must be ascertained in some other rational way, and from such elements as are obtainable."

In volume 2, Moore on Carriers (2 ed.), § 4 of the chapter (XV) on Damages deals with the measure of damages against carriers where the shipment is only injured, and, after stating the ordinary measure of dam-

ages, it is there said: "Reasonable costs and expenses incurred in repairing damage and compensation for the loss of the use of the goods during such time  *  *  * have been held to be recoverable, in addition to the actual loss, where the injury to the goods was lessened by the action of the plaintiff. The law, for wise reasons, imposes upon a party subject to injury from a breach of contract the active duty of making reasonable exertions to render the injury as light as possible."

We conclude therefore that there was no error in directing the jury to return a verdict in favor of the plaintiff for the cost of the repairs, because the sum thus expended was less than the depreciation in market value was shown to have been. The plaintiff made no objection to the court fixing the cost of repair as the measure of damages, and, in the absence of objection on the plaintiff's part, his attitude is that of acquiescing in the assumption that the repair of the cases restored them to their former value, and no prejudice resulted to the railroad in doing this.

No error appearing, the judgment is affirmed.