Missouri Pacific Railroad Company *v.* Slatton.

4-4468

Opinion delivered December 21, 1936.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellants.

*Richardson & Richardson,* for appellee.

Mehaffy, J. Leo Slatton, a minor, by his father and next friend, Cecil Slatton, brought suit in the Randolph circuit court against L. W. Baldwin and Guy A. Thompson as trustees of the Missouri Pacific Railroad Company, alleging that the appellants operated a line of railroad through the town of O'Kean in Randolph county, Arkansas, and that the home of the appellee and his father was situated immediately west of the track of said railroad company from where the depot was located in the town of O'Kean; that at the north end of the depot was a well defined pathway constructed with cinders and chat, which had been used for many years with the consent and acquiescence of the appellants; that this pathway had been used daily by pedestrians crossing the railroad; many children lived in the town of

O'Kean, and they were accustomed to play around the depot and on the premises of appellants, and that this was known and acquiesced in by appellants; that the appellants used an explosive commonly known as a torpedo, and they stored and kept said explosives in large numbers in the depot house and upon the premises in such manner as to be easily seen by and accessible to small children; the appellants were aware that children frequented its property, and used said pathway. It was alleged that on April 25, 1935, while Leo Slatton and other small children were playing in and on said properties and using said pathway, Leo Slatton, a minor, eleven years old, came into possession of one of the torpedoes; that he was unaware of its dangerous properties, and while playing with it placed it upon the concrete sidewalk, struck it with a piece of metal, it exploded and blew out his left eye. He suffered other bruises and lacerations; that he suffered great pain and mental anguish and is permanently disfigured; he is a boy of more than ordinary intelligence. Appellee prayed judgment for $3,000.

The appellants filed answer denying the allegations in the complaint, and thereafter the appellee filed an amendment in which he alleged that he got the torpedo from the freight room; that it was lying on a barrel; had been negligently and carelessly placed and permitted to remain there; and that soon thereafter, while appellee was playing with the torpedo, it exploded and caused his injuries.

Leo Slatton testified in substance that he first stated that the torpedo was found on the pathway because he was afraid his father would punish him if he told him he had procured it from a barrel in the house; he admitted that he told the claim agent the same story he did his father at first. He testified about the injury to his eye, and that he got the torpedo in appellants' freight house.

Cecil Slatton testified in substance that he was the father of Leo Slatton; that he took Leo to the hospital, and that his son first told him that he got the torpedo out by the oil house on the track close to the path.

C. F. Bodie testified that he lived in O'Kean; had a store building there about 150 or 160 feet from the depot; there are no buildings between his store and the depot; he had observed small children playing around the depot for a good while; that he knew of no one else in the country that used torpedoes except the Missouri Pacific.

Lawrence Shelton testified that he lives at O'Kean and is in the grocery business; that his place of business is one block north of the depot; has seen small children playing around the depot a good many times, and has also seen the depot building left open and unattended.

Bud Parks testified that he lived in O'Kean; lived there all his life; had occasion to go into the depot a good many times before this boy was injured; does not know what a torpedo is.

C. H. Hubbel testified on behalf of the appellants that he heard of the accident of Leo Slatton and investigated it, and testified about the boy having told him that he found the torpedo out on the ground. This witness explained the plat, which was introduced in evidence, showing the little oil-house and the place where the boy said he found the torpedo, and never heard any contention made that it was found on top of a barrel in the freight depot.

A statement of A. Martin was read in evidence, in which he said he was the caretaker in charge of the depot and station grounds; that he had charge personally of everything in the depot, and is positive that no torpedo was around the depot house, station or grounds at any place.

The case was tried before a jury, a verdict was rendered for $500, and judgment was entered for this amount. The case is here on appeal.

The appellants contend that the court erred in its refusal to give an instruction directing the jury to return a verdict for appellants, and they say that the contributory negligence of Leo Slatton was a complete defense to the action.

Appellants call attention to the fact that the boys first told that they picked the torpedo up in the path

north of the track, and argue that it is passing strange that counsel for appellee made this change as to the allegation of negligence.

Whether the appellee told the truth or not was a question for the jury. If his testimony is to be believed, and the jury evidently believed it, then there can be no question about liability. He testifies that he went into the freight house and picked up the torpedo from a barrel. The evidence shows that children played there frequently, and this is not denied or disputed by the appellants.

It cannot be said that there was not substantial evidence that the appellee found the torpedo on a barrel in the freight house, and that small children were frequently playing around the freight house, and the house was frequently open and unattended.

The rule is well settled in this State that if the verdict of a jury is supported by substantial evidence, it will not be disturbed on appeal. *Mathis* v. *Magers*, 191 Ark. 373, 86 S. W. (2d) 171; *Baldwin* v. *Wingfield*, 191 Ark. 129, 85 S. W. (2d) 689; *Baldwin* v. *Waters*, 191 Ark. 377, 86 S. W. (2d) 172; *Smith* v. *Arkansas P. & L. Co.*, 191 Ark. 389, 86 S. W. (2d) 411; *Coca-Cola Bottling Co.* v. *McNeece*, 191 Ark. 609, 87 S. W. (2d) 38; *Manhattan Construction Co.* v. *Atkisson*, 191 Ark. 920, 88 S. W. (2d) 819. There are many other cases holding that if the verdict is supported by substantial evidence that it will not be disturbed by this court, and there are none to the contrary.

Appellants call attention first to the case of *United Zinc & Chemical Company* v. *Britt*, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28. They do not, however, discuss the opinion in that case, but they call attention especially to the annotations following that case, on page 266 of 36 A. L. R. There are a great many cases annotated, and one of them is *St. Louis & S. F. Railway Company* v. *Williams*, 98 Ark. 72, 135 S. W. 804, 33 L. R. A. (N. S.) 94. In that case the court said, after calling attention to the case of *Pittsburg Reduction Co.* v. *Horton*, 87 Ark. 576, 113 S. W. 647, 18

L. R. A. (N. S.) 905: "The court distinctly recognized the principle that negligence in unnecessarily leaving an explosive exposed so that children could have access to it, would be the proximate cause of an injury resulting therefrom, under circumstances similar to the facts of this case."

In the case of *St. Louis & S. F. Railway Company* v. *Williams, supra,* the court further said: "Cases may readily be found where it is held to be negligence to leave explosives or other dangerous substances exposed, so that injuries may result therefrom." But in that case there was no evidence of negligence, but the railway company was shown to have used its torpedoes by putting one on the track just before a train was to pass, and the testimony showed that it was always considered necessary to put a torpedo on the track at that place to protect the St. Paul train from those trains while it was discharging baggage, passengers, etc. That case distinctly recognizes the principle that negligence, in unnecessarily leaving an explosive exposed so that children could have access to it, would be the proximate cause of the injury.

In the case of *Pittsburg Reduction Co.* v. *Horton, supra,* a little boy named Copple, found a torpedo on the pathway, took it home, showed it to his parents, and kept it for about a week before he gave it to the Horton boy, and the court said:

"As above stated, the evidence speaking on the question, is undisputed, and, having determined that the intervening act of Charlie Copple's parents in permitting him to retain in his possession the caps broke the causal connection between the original wrongful act of appellants, and the subsequent injury of the plaintiff, there is nothing to submit to the jury."

Appellant also refers to the case of *Douglas Stephens, Administrator,* v. *Blackwood Lbr. Co.,* 191 N. C. 23, 131 S. E. 314, 43 A. L. R. 265. In that case the evidence shows that a 14-year-old boy had taken powder from a building, carried it a number of miles, and after several hours. was injured by its explosion, where the

boy possessed sufficient intelligence to appreciate the probable effect of his act.

Appellants call attention to numbers of authorities, but it may be stated as the settled rule of this court that if one unnecessarily leaves an explosive exposed so that children could have access to it, and, as in this case, leaves it in the house unattended, at a place where children frequently play, and while the explosive is thus left exposed, a child gets possession of it and is injured, the person who left it so exposed will be liable.

It is argued that there is no evidence, or rather that there is no preponderance of evidence, in favor of appellee, and that the burden was upon him to prove the allegation of negligence. It is said that he failed to do this because the only witness who threw light on the matter is the minor, Leo Slatton, and that he is squarely contradicted by his original complaint. It is sufficient to say that we do not pass on the credibility of witnesses or the weight to be given to their testimony, but this was for the jury.

Appellant contends that the court erred in refusing to give the following instruction to the jury:

"The court instructs you that children may be trespassers the same as adults. That they have no right to frequent the stations and depots of the defendant in its freight department, and that the employees and servants of the company are not required to anticipate their presence where they have no right to be. If you find from the evidence in this case that Leo Slatton went upon the station grounds of the defendant company and went in where freight was being stored and handled, and there picked up the torpedo as alleged in the amended complaint filed herein and was injured, then under the law, he would not be entitled to recover, and your verdict would be for the defendant."

There was no error in refusing to give this instruction. It told them in effect that if Leo Slatton went upon the station grounds of the company, and went in where freight was being stored and was injured, then under the law he could not recover. If he went into the freight house, as the testimony shows he did, where chil-

dren were accustomed to go, and the freight house was left unattended and open, and torpedoes exposed, and he took possession of one and was injured, the negligence of the company would be the proximate cause of the injury.

We find no error, and the judgment is affirmed.